UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEE ANDREW SOBCZAK,

   Plaintiff,

Case No. 1:09-cv-57

Hon. Gordon J. Quist

vs.

DANIEL SPITTERS, P.A., *et al.*,

   Defendants.
            /

**REPORT AND RECOMMENDATION**

  This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on Daniel Spitters, P.A.'s motion for summary judgment (docket no. 74).

  **I.**  **Background**

  Plaintiff's allegations against P.A. Spitters are summarized as follows. On May 29, 2007, plaintiff was sent to Hackley Hospital in Muskegon for examination of several abdominal pain. Amend. Compl. at ¶ 5. Tests at the hospital determined that he had swollen lymph nodes, inflammation and roughly three feet of stool in his intestines. *Id.* The doctor prescribed pain medication and told plaintiff to consume large amounts of water. *Id.* Plaintiff returned to MCF, where he was called to health services for an "after hospital" examination and review on May 30th. *Id.* at ¶¶ 5-6.[1] At that time, P.A. Spitters stated that he was under no obligation to follow

---

[1] The hospital's records show that plaintiff arrived at the emergency room on May 29, 2007 at 23:19 hours (11:19 p.m.) and discharged on May 30, 2007 at 03:30 hours (3:30 a.m.). *See* Hackley Hospital records (docket no. 74-4). MDOC medical records reflect that plaintiff's examination with P.A. Spitters occurred on May 31, 2007 not May 30, 2007 as alleged in the complaint. *See* discussion in § III, *infra*.

prescription orders from other treating doctors and denied the medication ordered by the outside doctor at the hospital. *Id.* at ¶ 6. P.A. Spitters "refused to look in Plaintiff's medical records for past back/neck treatment." *Id.* Even though Spitters was "informed" of plaintiff's "back/neck injury" and that medication had been prescribed for these injuries at other MDOC locations, he denied plaintiff's request for a non-narcotic pain reliever. *Id.* In addition, P.A. Spitters "never examined Plaintiff's back/neck, although he recorded in Plaintiff's chart he did, and found no reason for pain management." *Id.*

Plaintiff further alleged that on or about May 31st, he filed a grievance, no. MCF-07-06-00524-12F (grievance no. "524"), stating that P.A. Spitters refused to examine for back/neck pain, while at the same time recording in the medical records that plaintiff did not need pain medication. *Id.* at ¶ 8. Also, on or about May 31st, plaintiff filed a grievance, no. MCF-07-06-00525-12F (grievance no. "525"), stating that P.A. Spitters failed to follow the hospital doctor's order regarding pain medication. *Id.* at ¶ 9. Plaintiff alleged that he appealed both grievances to step III. *Id.* at ¶¶ 35-36.

Plaintiff set forth three causes of action. First, plaintiff alleged that he was denied "effective medical treatment" causing him "extreme physical pain and discomfort" contrary to the Eighth and Fourteenth Amendments. Second, plaintiff alleged that defendants engaged in a conspiracy to deny him medical treatment contrary to the Eighth and Fourteenth Amendments. Third, plaintiff alleged that defendants showed deliberate indifference to his serious medical needs by failing to treat those needs contrary to the Eighth and Fourteenth Amendments. Plaintiff seeks injunctive relief (including sending him to a G.I. specialist and transferring him to another MDOC

facility), declaratory relief, and $750,000.00 of compensatory and punitive damages against each defendant.

The court has previously dismissed defendants Correctional Medical Services, Inc. (CMS), Dr. Jason Kim; R.N. Amy Meyers, R.N. Mary Hubbell, R.N. Michael Whalen, and Michigan Department of Corrections (MDOC) Regional Health Administrator (RHA) Julie Van Setters. *See* Order (docket no. 72).[2] In addition, the court dismissed plaintiff's claim that P.A. Spitters disagreed with the opinion to dispense medication as prescribed by the hospital doctor. *See* Report and Recommendation at pp. 9-10 (docket no. 63); Order Adopting Report and Recommendation (docket no. 72). However, the court did not dismiss plaintiff's claim regarding P.A. Spitters' alleged failure to examine plaintiff on May 30th:

> Plaintiff's allegations, which this court must accept as true for purposes of defendants' motion to dismiss, asserts that P.A. Spitters did not examine him, falsified a medical record to suggest that he did, and refused to place him on a pain management program. Such allegations, if true, could support a claim for deliberate indifference under the Eighth Amendment

Report and Recommendation at p. 10. *See also*, Order Adopting Report and Recommendation at p. 7. This matter is now before the court on P.A. Spitters' motion for summary judgment on the remaining claims.

**II.    Legal standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468

---

[2] Another defendant, R.N. William Barnett, has not yet been served with a summons and complaint in this action. The court has recently directed the clerk to re-issue and serve a summons on Barnett. *See* Order Directing Service on Defendant William Barnett, R.N. (docket no. 79).

U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendant has moved for summary judgment for lack of exhaustion and on the merits. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

P.A. Spitters' motion for summary judgment is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### III. Discussion

#### A. Lack of Exhaustion

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive 03.02.130.[3] Under the grievance procedure, a prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

Policy Directive 03.02.130 at ¶ R (emphasis in original).[4] The prisoner must send the Step I grievance to the appropriate grievance coordinator. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the appropriate grievance coordinator. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must file a completed Step III grievance, using the appropriate form.

Defendant has located three grievances that are relevant to this action: MCF-2007-06-00524-12F (grievance no. 524); MCF-2008-04-00375-123 (grievance no. 375); and MCF-2008-05-

---

[3] Plaintiff complains of medical treatment received from April 2007 through April 2008. Two different versions of this policy directive applied during the course of that treatment, i.e., an earlier version effective March 5, 2007 and a later version effective July 9, 2007. While the lettering of the paragraphs in the two versions is not identical, and slight variations occur, each of the policy directives contain the basic requirements outlined in this report.

[4] The quoted language is from the most recent version of the policy directive (i.e., effective July 9, 2007). However, the earlier version contains nearly identical language.

00455-123 (grievance no. 455).  *See* Exhibits H, I and J attached to Defendant's Brief (docket nos. 74-10, 74-11 and 74-12.  All of these grievances have been appealed through Step III.  *Id.*

### 1.     Grievance no. 524

Plaintiff filed this grievance on May 30, 2007, complaining of an incident that occurred on that date.  Grievance no. 524 (docket no. 74-10).  In his grievance, plaintiff stated that he asked the "P.A." if he would place plaintiff back on Neurontin for the pain in his back as prescribed by a previous doctor, but the P.A. "did not want to discuss it at all."  *Id.*  Plaintiff's medical records do not reference any interaction with between a medical provider and plaintiff on May 30th.  *See* Medical Records (docket no. 74-4).  Grievance no. 524 was received by the MDOC at Step I on June 1, 2007.  *See* Grievance no. 524.  The Step I response to the grievance references an evaluation by a medical practitioner on May 31st (not May 30th).  Defendant contends that this grievance is not properly exhausted because plaintiff failed to identify the name of the individual involved as required by Policy Directive 03.02.130.  In addition, the Step III appeal was rejected as untimely filed, having been submitted more than two months late.  *See* Grievance no. 524.  Plaintiff has not properly exhausted this grievance.  *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.  Accordingly, defendant is entitled to summary judgment on plaintiff's claim arising from this grievance.[5]

---

[5] In an earlier summary of plaintiff's allegations, the court noted that grievance no. 524 was directed to P.A. Spitters and that another grievance, MCF-07-06-00525-12F (grievance no. 525) stated that Spitters failed to follow a Hackley Hospital doctor's order for pain medication.  *See* Report and Recommendation at p. 3 (docket no. 63).  However, at that time the court was not addressing defendant's affirmative defense of lack of exhaustion but simply repeating plaintiff's allegations.  As discussed above, plaintiff did not name P.A. Spitters in grievance no. 524.  Furthermore, grievance no. 525 is not before the court, because the underlying claim has been dismissed.

### 2. Grievance no. 375

Plaintiff filed this grievance on Aril 14, 2008, complaining of an incident that occurred on December 12, 2007. Grievance no. 375 (docket no. 74-11). In his grievance, plaintiff stated: that he was seen in Hackley Hospital for treatment of intestinal blockages in November 2007; that upon his release "medical staff" informed plaintiff that he had an appointment with a specialist in December; that on December 17, 2007, he sent a healthcare kite regarding his appointment; that he was advised that CMS did not authorize the appointment with the specialist and that plaintiff would be seeing Dr. Hawkins for treatment; that Dr. Hawkins quit; and that P.A. Spitters "refuses to treat abdomin [sic] issues, nor will he send me out to an [sic] specialist for treatment, nor prescribe ANY pain medication for the constant pain I am in, effectively leaving me to suffer day & night." *Id.* In the Step I response, the MDOC personnel advised plaintiff: that the followup by a specialist was not medically indicated on "12/14/08" [sic]; that the medical practitioner is following plaintiff's condition and can request a specialist referral if he deems it necessary; that plaintiff was seen by the medical practitioner on January 30, 2008; that plaintiff's medication was changed; that there was no medical indication for specialty referral at that time; that plaintiff is scheduled to see a medical practitioner on May 7, 2008; and that plaintiff may discuss his concerns with the medical practitioner at that time. *Id.*

In the Step II response, MDOC personnel advised plaintiff that "citing a date in December as the incident could cause a grievance to be rejected," and then denied the merits of the grievance, noting: that plaintiff's condition as of January 30, 2008 was considered to be in "fair" control; that a registered dietician completed an extensive chart review on May 2, 2008; that the medical practitioner ordered a diet per the dietician's recommendations; that the medical practitioner

8

saw plaintiff on May 7, 2008, and noted an improvement in his condition as "good;" and that the medical practitioner found no medical necessity to refer plaintiff to a specialist. *Id.*

Defendant contends that the grievance failed to grieve the allegation brought in his complaint that "P.A. Spitters never examined Plaintiff's neck/back." Defendant's Brief at p. 23. Plaintiff's claims against P.A. Spitters arise from acts that occurred on either May 30th or May 31st. Plaintiff made no allegation against P.A. Spitters for the matters complained in this grievance which occurred on or about December 17th. Accordingly, this grievance does not support any claim against P.A. Spitters before the court.

        **3.     Grievance no. 455**

Plaintiff filed this grievance on May 19, 2008 complaining of an incident that occurred on May 7, 2008. Grievance no. 455 (docket no. 74-12). In his grievance, plaintiff stated: that he requested to be taken to the hospital during the evening of May 7, 2008, due to extreme pain in his abdomen; that he associated this pain with previous intestinal blockages; that P.A. Spitters saw plaintiff earlier in the day and offered an enema but no pain medication; that the pain increased throughout the night and his stomach became distended; and that [R.N.] Rosa Rodriguez later denied plaintiff's request to go to the hospital, offering him ibuprofen. *Id.*

Defendant contends that the grievance failed to grieve the allegation brought in his complaint that "P.A. Spitters never examined Plaintiff's neck/back." Defendant's Brief at p. 24. Plaintiff's claims against P.A. Spitters arise from acts that occurred on May 30 or 31, 2007. Plaintiff made no allegation against P.A. Spitters for the matters complained in this grievance which occurred on May 7, 2008. Accordingly, this grievance does not support any claim against P.A. Spitters before the court.

4. **Conclusion**

The only claim alleged against P.A. Spitters arose on or about May 30 or May 31, 2007. Plaintiff has not properly exhausted any grievances with respect to these claims. P.A. Spitters is entitled to summary judgment for lack of exhaustion.

B. **Eighth Amendment Claim**

In the alternative, the court should grant defendant's motion for summary judgment on the merits of the Eighth Amendment claim.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect

that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).[6]

In the present motion for summary judgment, P.A. Spitters contends that plaintiff's "back/neck pain" was not a serious medical need for purposes of an Eighth Amendment claim. In his affidavit, P.A. Spitters stated as follows. On May 31, 2007, P.A. Spitters performed a physical examination of plaintiff, which included a thorough abdominal examination. Spitters Aff. at ¶¶ 5 and 10 (docket no. 74-5). At that time, P.A. Spitters noted plaintiff "to have normal bowel sounds in all four (4) abdominal quadrants, no abdominal tenderness, no abdominal masses, and no organomegaly. *Id.* at ¶ 10. P.A. Spitters also recorded plaintiff's "indication that he was not having a flare up of his underlying Crohns condition," and that plaintiff " was having normal bowel function, no mucous passage, no blood passage, and normal stools." *Id.* at ¶ 11.

P.A. Spitters reported the balance of his May 31st examination as follows:

---

[6] While plaintiff mentions the Fourteenth Amendment, he does not allege a due process violation. It appears that plaintiff's reference to his "rights under the Eighth and Fourteenth Amendment" refers to a claim for "cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth." *See Estelle*, 429 U.S. at 101-02.

12. During the May 31, 2007 examination, Mr. Sobcza revealed that he had run out of Asacol (Mesalamine), the medication he uses to treat his bowel condition, as he has been taking the medication incorrectly. Accordingly, I ordered more Asacol medication for Mr. Sobczak.

13. During the examination of May 31, 2007, I noted that Mr. Sobczak was not having a flare up of his Crohn's condition, and that the condition was under control, with no acute exacerbation.

14. My examination of Mr. Sobczak's abdominal status on May 31, 2007[,] revealed no medical indication for Mr. Sobczak to receive the strong pain medications Ultram and Neurontin, or to be placed on a pain management program.

15. Moreover, during the course of the examination on May 31, 2007, I observed Mr. Sobczak sit, stand, and move with normal, fluid motions, which evidenced nothing to suggest Mr. Sobczak was experiencing abdominal or any other type of pain.

16. During the examination on May 31, 2007, I did not observe Mr. Sobczak grimace, groan, restrict his range of motion, guard his movement, orotherwise exhibit any behavior indicative of abdominal or any other type of pain.

17. During the examination on May 31, 2007, I observed Mr. Sobczak sit, stand, and move with normal, fluid motions, and thus exhibit no medical indication that he required an examination of his neck and/or back.

18. Because Mr. Sobczak exhibited no medical indication that he required an examination of his neck and/or back, I did not perform a neck and/or back examination.

19. Because I did not examine Mr. Sobczak's neck and/or back, I did not document having done so.

20. I did not falsify Mr. Sobczak's medical record to suggest that I examined his neck and/or back, nor did I falsify his medical record in any other way.

*Id.* at ¶¶ 12-20.

P.A. Spitters summarized his examination as follows:

21. My examination of Mr. Sobczak on May 31, 2007[,] revealed that Mr. Sobczak: (1) was not having a flare up of his underlying Crohns condition; (2) had no abdominal tenderness; and (3) exhibited normal, fluid motions within normal range of motion. All of these observations suggested there was no medical

indication for Mr. Sobczak to receive the powerful pain medications Ultram and Neurontin, or to be placed on a pain management program.

*Id.* at ¶ 21.

The medical record for May 31st is consistent with this affidavit. *See* MDOC Medical Record (Ma7 31, 2007) (docket no. 74-4). With respect to pain medication, P.A. Spitters noted: that plaintiff was given toradol which was adequate for his pain relief (abdomen); that plaintiff ran out of Asacol because he was taking it incorrectly; that "we both agreed" that plaintiff's Crohns disease is under control, without acute exacerbation, with no indication for ultram or neurontin; that [b]efore leaving HS this date pt advised me he intends to get back on the 'ultram and neurontin I was previously for my back '"; and that when Spitters gave plaintiff a pass and told him that the Asacol would be in the next day, "[plaintiff] began yelling at me he wanted Neurontin NOW." *Id.*

The unrebutted evidence as set forth in P.A. Spitters' affidavit and the medical records do not support plaintiff's claims that Spitters was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment or that Spitters cause him extreme pain and discomfort in violation of the Eighth Amendment. Defendant contends that plaintiff's back and neck conditions are not serious conditions under the Eighth Amendment at this time. The court agrees. Plaintiff's MDOC intake screening from March 22, 2007 did not reference any back or neck problem, nor did it reference a need for ultram or neurontin. *See* MDOC Medical Records (March 22, 2007) (docket no. 74-4). At that time, plaintiff's conditions were identified as asymptomatic Crohns disease, mental illness, a visual impairment and drug addiction. *Id.* The only unresolved diagnosis shown on plaintiff's medical transfer report of April 26, 2007 was enteritis. *See* MDOC Medical Records (April 26, 2007) (docket no. 74-4). There is no evidence in the record that plaintiff

suffered from any medical condition affecting his back or neck, let alone a *serious* medical condition, when P.A. Spitters examined him on May 31st.

In addition, there is no evidence that P.A. Spitters denied plaintiff medical treatment. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* It is undisputed that plaintiff received medical treatment from P.A. Spitters. While plaintiff sought additional pain medication from P.A. Spitters, his desire for medication does not establish a federal constitutional claim. "A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim." *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003). As one court observed, "a prison sentence is not a voucher for free health care on demand." *Lee v. Beard*, No. 4:CV-03-1026, 2008 WL 744736 at *8 (M.D. Pa. March 18, 2008).

Furthermore, the unrebutted evidence as set forth in P.A. Spitters' affidavit and the medical records do not support plaintiff's claims that Spitters did not examine him on May 31st, refused to look at plaintiff's past record for back and neck problems, and falsified a medical record regarding the examination. The evidence indicates that Spitters examined plaintiff on that date. Having found no indication that plaintiff suffered from a neck or back problem at the time, there was no reason for P.A. Spitters to review plaintiff's records for those problems. Finally, there is no

evidence that P.A. Spitters falsified any medical records with respect to the examination. Accordingly, the court should grant P.A. Spitters' motion for summary judgment on his remaining Eighth Amendment claims.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that P.A. Spitters' motion for summary judgment (docket no. 74) be **GRANTED**.


Dated: February 3, 2011                     /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).